IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TEMPLE UNIVERSITY HOSPITAL, INC.** :  :  :  : | **CIVIL ACTION** |
| **v.** : : | **NO. 16-1073** |
| **THE UNITED STATES OF AMERICA** : | |

MEMORANDUM

**KEARNEY, J.**                                                                                                       June 20, 2016

A hospital deciding to settle a malpractice action involving a physician practicing under its roof before being found liable will often seek contribution or indemnity from non-parties possibly involved in the alleged unproven but now-settled malpractice action. The hospital may sue the physician's employer for joint tortfeasor contribution or, if the hospital is entirely without fault, for indemnity under a possible contract to share physician services or under the common law. This case presents a different issue: a hospital suing neither the physician nor his employer but instead seeking contribution and indemnity from the United States because the hospital and the physician's employer signed a physician sharing agreement and the employer allegedly receives federal funding rendering the physician a deemed federal employee under the Public Health Services Act. The United States never signed the physician sharing agreement between the hospital and the physician's employer and the hospital has not pled, or shown case law, imbuing the physician's employer with authority to bind the United States to a possible contractual indemnity arising from a private physician sharing agreement. As the hospital pled facts sufficient at this preliminary stage for either common law contribution or indemnity from

the United States subject to discovery but not contractual indemnity, we partially grant the United States' motion to dismiss the contractual indemnity claim but not the non-contractual claims in today's accompanying Order.

**I.      Alleged Facts**

Temple University Hospital, Inc. ("Hospital") sues under the Federal Tort Claims Act seeking indemnity or contribution from the United States for a settlement it paid in a state court medical malpractice action arising from the conduct of Dr. Clinton A. Turner before a liability finding. Dr. Turner, an employee of Delaware Valley Community Health ("DVCH"), served as the attending obstetrician at the Hospital during the birth of Minor J.M.[1] J.M. and his mother sued the Hospital for, among other things, Dr. Turner's alleged negligence while working for DVCH at the Hospital. DVCH is a federally funded entity whose employees, including Dr. Turner, are deemed employees of the Public Health Service under the Public Health Service Act[2] for purposes of providing malpractice coverage under the Federal Tort Claims Act.[3]

The Hospital seeks contractual indemnity based on its reading of its May 11, 2009 "Shared Coverage Agreement" ("Agreement") with DVCH "to share mutually agreeable physician coverage for obstetric/gynecology in [the Hospital] when our respective physicians are unavailable to provide care and treatment of our respective patients (the "Services"). Under the Agreement, each of the parties shall provide professional services to the other under" terms and conditions in the Agreement.[4] The Hospital argues, even though the Agreement is not signed by any authorized agent of the United States, we should as a matter of law construe the Agreement to contractually require the United States to indemnify the Hospital for Dr. Turner's "wrongful acts," as alleged in the underlying medical malpractice action, because he is a "deemed employee" of a Public Service Agency.[5]

2

The Hospital alternatively asserts a common law contribution claim, arguing if we find harm from medical negligence, then Dr. Turner's negligence caused or contributed to the harm and the United States becomes a joint tortfeasor with the Hospital.[6] The Hospital also seeks common law indemnification alleging the United States "was solely legally obligated" to pay the settlement for Dr. Turner's negligence based on *respondeat superior*, agency, and apparent and/or ostensible agency.[7]

## II. Analysis

The United States moves to dismiss arguing the Hospital fails to state a claim for contractual or common law indemnity or contribution. In today's accompanying Order, we grant the United States' motion to dismiss the Hospital's contractual indemnity claim and deny its motion on the Hospital's common law indemnity and contribution claims.[8]

### A. The Hospital fails to state a claim for contractual indemnity.

To recover for breach of an express or implied-in-fact contract with the United States, the Hospital must show "the officer whose conduct is relied upon had actual authority to bind the government in contract."[9] "An officer of the United States who does not possess express contracting authority may nevertheless bind the United Sates, but only if he has implied actual authority."[10] Implied actual authority to bind the United States appears when "such authority is considered to be an integral part of the duties assigned to a government employee."[11]

The United States moves to dismiss the contractual indemnity claim arguing the Agreement does not impose any obligations on the United States because no federal employee with express or implied authority to bind the United States signed the Agreement. The United States also argues the Hospital fails to plead facts DVCH had implied authority to bind the United States. The Hospital argues DVCH possessed the implied authority to bind the United

States because the Public Health Services Act deems DVCH a federally funded clinic.[12] The Hospital cannot cite a case where a deemed federally funded clinic had the authority to bind the United States simply due to its status as a deemed federally funded clinic. Without alleging further facts into DVCH's implied authority to bind the United States, the Hospital asks for discovery into whether DVCH had authority.

We find the Hospital's argument unpersuasive. Under *Landau*, the Hospital must allege facts showing DVCH, as a federally funded clinic, had the implied authority to bind the United States to get past the pleading stage. To demonstrate DVCH plausibly had the implied authority to bind the United States, *Landau* compels the Hospital to plead facts supporting an "integral part" of DVCH's duties consisted of binding the United States in contract. The Hospital does not plead facts showing an "integral part" of DVCH's duties consisted of binding the United States in contract. Instead, the Hospital argues DVCH, as a deemed federal entity, has the authority to bind the United States just because it is a deemed federal entity. This argument does not "allow the court to draw the reasonable inference" DVCH had implied authority to bind the United States. We find the Hospital fails to state a claim for contractual indemnity in its Second Amended Complaint.[13]

### B. The Hospital states a claim for contribution.

The right of contribution "may be pursued in a separate action by an original defendant who has previously been held liable to the original plaintiff."[14] To recover for contribution, "a settling party must: (1) be a joint tortfeasor; (2) establish joint liability with another; and (3) have extinguished the liability of the other joint tortfeasor to the injured party."[15]

The United States seeks to dismiss the Hospital's contribution claim, arguing the Hospital fails to allege sufficient facts to show it fully extinguished Dr. Turner's liability in the settlement

to the underlying action.  The United States argues the Hospital makes conclusory statements regarding Dr. Turner's liability without alleging the requisite facts. The Hospital argues the United States incorrectly dismisses the allegations as mere conclusory statements. The Hospital also offers to quote the release language in a Third Amended Complaint if we find its allegations are insufficient.

Producing the release language in a Third Amended Complaint is unnecessary. While legal conclusions "are not entitled to the assumption of truth," we find the Hospital's factual allegations regarding Dr. Turner's liability are sufficient to establish it extinguished Dr. Turner's liability in the settlement with J.M. [16] For example, the Hospital alleges, the "settlement agreement in the Underlying Action extinguished any and all liability of Dr. Turner to the Underlying Plaintiffs."[17]  This allegation suffices, as we cannot imagine additional facts other than copying the settlement release into the Second Amended Complaint.  We can review the factual basis after discovery.

As the United States moves to dismiss based solely insufficiency of allegations regarding Dr. Turner's liability, which we find sufficient, we find the Hospital plausibly states a contribution claim.[18]

### C. The Hospital pleads facts to state a common law indemnity claim.

Common law indemnity is "a right which enures to a person who, without any active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable."[19] The difference between primary and secondary liability depends "on a difference in the *character* or *kind* of the wrongs which cause the injury."[20]

5

The United States argues the Hospital cannot state a common law indemnity claim because, (i) as an alleged joint tortfeasor of Dr. Turner, it cannot turn around and allege it is faultless as to the malpractice, and (ii) the Hospital does not sufficiently allege a legal relationship which compelled it to pay Dr. Turner's legal liabilities in the underlying action.

### 1. At this preliminary stage, the Hospital pleads common law indemnity.

A party may plead for relief under inconsistent or contradictory theories if it has a factual basis to make such an assertion. Under Rule 8(d)(3), a party may "state as many separate claims or defenses as it has, regardless of consistency."[21] Rule 11(b)(3) obliges an attorney presenting the court with a pleading to certify "to the best of the person's knowledge, information, and belief, formed after an inquiry under the circumstances … the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; . . .."[22]

The United States argues the Hospital claims it is both a joint tortfeasor for contribution and not actively at fault for indemnity. The Hospital responds Rule 11 allows it to plead inconsistent theories and it pleads enough facts to support causes of action for both contribution and common law indemnity.

We agree with the Hospital's argument. "Joint tortfeasor status is a legal determination made by the Court."[23] Although the Hospital alleges it is a joint tortfeasor for the purpose of its contribution claim, its conclusory statement is "not entitled to the assumption of truth."[24] As the state court did not adjudicate the Hospital's negligence in J.M.'s action, we have no record on a Rule 12(b)(6) review as to each party's degree of negligence.[25] The Hospital alleges Dr. Turner and Hospital employees treated J.M. and his mother, Dr. Turner served as the attending physician, and the incident took place in the Hospital. Without notice of a prior adjudication on

negligence, it is plausible we could find the Hospital secondarily negligent thus allowing it to obtain indemnity.

### 2. It is plausible the Hospital had a legal obligation compelling it to pay the settlement.

The United States argues the Hospital does not allege a legal relationship compelling it to pay the legal liability of Dr. Turner and fails to state a claim for common law indemnity. The Hospital responds J.M. and his mother sued under a theory of *respondeat superior*, a theory making the Hospital liable for the actions of all "agents, servants, employees and/or apparent, and/or ostensible agents" who treated J.M. and his mother.[26] The Hospital alleges its legal obligation to pay the settlement.

"In Pennsylvania, an independent contractor doctor can be an ostensible agent of a hospital if (1) the patient looks to the hospital for care, not the individual doctor, and (2) the hospital holds the doctor out as its employee."[27] The Hospital adequately alleges Dr. Turner is an ostensible agent of the Hospital at the time of the incident. The Hospital alleges it sent Suzanne Miller to Temple University Hospital's Obstetrics and/or Labor and Delivery unit "for further assessment and evaluation," which sufficiently provides Miller looked to the Hospital for care.[28] The Hospital also alleges its own employees helped Dr. Turner treat Miller, supporting a claim the Hospital held Dr. Turner out as its employee.[29] The Hospital pleads a plausible claim to relief for common law indemnity.

### III. Conclusion

The Hospital pled facts for contribution and common law indemnity but has not pled a fact basis for contractual indemnity under the Agreement never signed by the United States and without any facts suggesting a plausible basis to find the United States granted authority to DVCH to bind the United States to an Agreement with the Hospital. We partially grant the

7

United States' motion only as to contractual indemnity in the accompanying Order mindful a more fulsome record after vigorous discovery will address many of the open fact questions on contribution and indemnity sufficiently pled in the Second Amended Complaint.

---

[1] Second Amended Complaint ("SAC") at ¶¶ 1, 3.  In the underlying action, Minor J.M., through his parents, sued the Hospital for medical malpractice in connection with the care and treatment rendered in connection with J.M.'s birth. *Id.* at ¶ 20.  J.M. and his parents sued the Hospital only.  The Hospital settled the underlying action on August 22, 2014.  *Id.* at ¶ 28.

[2]  42 U.S.C. § 233(g); SAC at ¶¶ 4-6.

[3] 28 U.S.C. §§ 1346, 2671-2680; SAC at ¶ 7.

[4] *Id.*; see also SAC at ¶¶ 16-17. Although both parties decided not to mention standing, the Agreement is between Temple Physicians, Inc. and DVCH, not the Hospital and DVCH. At the motion to dismiss stage, we cannot resolve the corporate relationships and identities of Temple Physicians, Inc. and the Hospital and issues surrounding which entity entered the Agreement will be resolved when raised by a party.

[5] SAC at ¶¶ 40-48.

[6] *Id.* at ¶¶ 30-39.

[7] *Id.* at ¶¶ 49-56.

[8] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors*, *Inc.,* 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010).

[9] *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989) (quoting *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1575 (Fed. Cir. 1984), *cert. denied*, 474 U.S. 818 (1985)).

[10] *Salles v. United States*, 156 F.3d 1383, 1384 (Fed. Cir. 1998).

[11] *H. Landau & Co.*, 886 F.2d at 324.

[12] See 42 U.S.C. § 233(g).

[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise.") In light of this finding, we decline to rule on whether we have jurisdiction under the Contract Disputes Act or the Federal Tort Claims Act.

[14] *Oviatt v. Automated Entrance Sys. Co.*, 583 A.2d 1223, 1226 (Pa. Super. 1990).

[15] S*laughter v. Pennsylvania X-Ray Corp.*, 638 F.2d 639, 642 (3d Cir. 1981).

[16] *Connelly,* 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 675, 679).

[17] SAC at ¶ 37.

[18] The parties "will have the opportunity to defend against liability and the reasonableness of the amount" after the pleadings. *Oviatt,* 583 A.2d at 1226.

[19] *Builders Supply Co. v. McCabe*, 77 A.2d 368, 370 (Pa. Super. 1951).

[20] *Id.* (emphasis in original).

[21] FED. R. CIV. P 8(d)(3).

[22] FED. R. CIV. P 11(b)(3).

[23] *St. Paul Fire and Marine Ins. Co. v. Nolen Group, Inc.*, 2007 WL 2571524 (E.D. Pa. 2007).

[24] *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 675, 679).

[25] A defendant found negligent in the underlying action is barred from seeking common law indemnity from additional defendants. *See Builders Supply Co.,* 77 A.2d at 374 ("It being clear, then, that plaintiff's own negligence as a contributing factor in the accident…"); *City of Wilkes-*

---

*Barre v. Kaminski Brothers, Inc.*, 804 A.2d 89, 92 (Pa. Commw. 2002) ("The jury apportioned the negligence and found … the City 25% negligent…").

[26] SAC at ¶ 21.

[27] *Stipp v. Kim,* 874 F. Supp. 663, 665 (E.D. Pa. 1995).

[28] SAC at ¶ 26.

[29] *Id.*